IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **VALERIE DENECE HARRIS** | **PLAINTIFF** |
| **VS.** | **CIVIL ACTION NO: 3:17cv291CWR-LRA** |
| **NOXUBEE COUNTY, MISSISSIPPI AND BETTY S. ROBINSON** | **DEFENDANTS** |

**PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Valerie Denece Harris submits her Memorandum Brief in Support of her Motion for Partial Summary Judgment as follows:

### I. INTRODUCTION

Valerie Harris ("Harris") was a long time employee of the Noxubee County Tax Assessor / Tax Collector's office. It is undisputed in this case that Harris was terminated from her position because she refused to sign a Non-Disclosure Agreement promising not to speak publically about anything that occurred in the office.

As explained below, based on the undisputed facts of this case, Harris is entitled to summary judgment as to both Defendants' liability for violations of the First Amendment. The Non-Disclosure agreement which Harris refused to sign constituted an unconstitutional prior restraint on speech. The non-disclosure agreement prohibited speech on myriad matters of public concern and which were outside Harris' actual job duties as a deputy tax collector. Harris was admittedly fired in retaliation for not giving up her First Amendment rights.

There is no dispute that the non-disclosure agreement would have prohibited Harris from engaging in First Amendment protected speech, and there is no dispute that Harris was fired for

refusing to agree to the speech prohibition. Accordingly, Harris was necessarily fired in retaliation for exercising her First Amendment rights. Harris is entitled to judgment as a matter of law as to Defendants' liability for violation of the First Amendment.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Valerie Harris ("Harris") was employed by Noxubee County for eighteen and a half years. (Depo. of Valerie Harris at 12-13, attached to Pl.'s Mot. as Exhibit "A"). Harris worked in the Tax Assessor / Tax Collector's office. (Depo. of Harris at 12-13). Harris was a Deputy Collector and a Deputy Assessor. (Depo. of Betty Robinson at 15, attached to Pl.'s Mot. as Exhibit "B").

Betty Robinson ("Robinson") was elected as the Noxubee County Tax Assessor and Tax Collector, and took office in December 2015. (Depo. of Betty Robinson at 9). Robinson testified that she was the policymaker for the Tax Assessor and Tax Collector's office. (Depo. of Betty Robinson at 13). Robinson had final authority to hire and fire employees within her office. (Depo. of Betty Robinson at 13).

The Tax Assessor and Tax Collector's office has the following employee positions with various job duties:

1. Deputy Tax Collector – sells automobile tags, collects real and personal property tax, sells and sells privilege licenses. (Depo. of Betty Robinson at 17).
2. Deputy Tax Assessor – Enters data on the land rolls for *ad valorem* taxes and works with homestead exemptions. (Depo. of Betty Robinson at 17).
3. Mapper – Maps property by referencing property deeds. (Depo. of Betty Robinson at 18).

4. Appraiser – values real property for assessment purposes. (Depo. of Betty Robinson at 10, 17-18)

5. Tax Assessor / Collector – the elected manager / supervisor of the entire office. (Depo. of Betty Robinson at 11, 14-15).

On November 17, 2016, Robinson assembled her entire staff and told them that they would be required to sign a non-disclosure agreement. (Depo. of Betty Robinson at 38-39). The Agreement read as follows:

> Please be reminded that discussing any matters concerning the business or conduction [sic] of business of the Noxubee County Tax Assessor/Collector's Office is strictly prohibited. This includes but is not limited to employee and employer meetings. Failure to adhere is grounds for immediate termination.
>
> _____
> Employee
>
> _____
> Employer

(Non-Disclosure Agreement, attached to Pl.'s Mot. as Exhibit "C").

Harris refused to sign the Agreement at the November 17, 2016, staff meeting. (Depo. of Betty Robinson at 40-41). Robinson presented the Agreement to Harris again on January 23, 2017. (Depo. of Betty Robinson at 41-42). Harris again refused to sign the Agreement. (Depo. of Betty Robinson at 42). Robinson told Harris that if she would not follow orders and sign the Agreement, Harris needed to "hit the door." (Depo. of Robinson at 42).

Robinson admits that she then fired Harris and that the reason she fired Harris was because Harris would not sign the Non-Disclosure Agreement. (Depo. of Robinson at 43). Robinson testified as follows:

3

> Q. I'm asking you. And you certainly can explain it. I think it's a yes-or-no question. Did you fire Valerie Harris?
>
> A. Yes.
>
> Q. Did you fire Valerie Harris because she wouldn't sign Exhibit 1 [the Non-Disclosure Agreement]?
>
> A. I fired Valerie Harris because she did not do what I asked her to do.
>
> Q. And is the thing you asked her to do sign Exhibit 1?
>
> A. Yes, sir.
>
> Q. You'll agree with me that you fired Valerie Harris because she wouldn't sign this agreement, Exhibit 1?
>
> A. Yes, sir.

(Depo. of Betty Robinson at 43).

Harris applied for unemployment compensation through Mississippi Department of Employment Security. (Notice of Monetary Benefit Determination, attached to Pl.'s Mot. as Exhibit "D"). Noxubee County's purported reasons for Harris' separation from employment were all over the board during the Administrative Proceeding.

In Noxubee County's response to a request for information from MDES, Noxubee County claimed that Harris was terminated. (*See* Notice to Employer of Claim Filed and Request for Information, attached to Pl.'s Mot. as Exhibit "E"). However, in a letter to MDES, Robinson stated that Harris voluntarily resigned by not reporting to work after January 23, 2017. (*See* Correspondence from Robinson to MDES dated February 7, 2017, attached to Pl.'s Mot. as Exhibit "F").

The MDES first determined that Harris was fired for refusing to sign the agreement and that this constituted "misconduct connected with her work." (Notice of Non-Monetary Decision, attached to Pl.'s Mot. as Exhibit "G"). Harris filed an appeal of the MDES determination. (*See*

ALJ Acknowledgment of Appeal Filed, attached to Pl.'s Mot. as Exhibit "H"). A telephonic hearing was held before Administrative Law Judge Karen Granger on March 29, 2017. (Audio recording of ALJ hearing, attached to Pl.'s Mot. as Exhibit "I").[1] During the hearing, Robinson admitted that Harris was fired for refusing to sign the Non-Disclosure Agreement. (Audio Recording of MDES Hearing, Exhibit "I" at 21:00 minutes through 23:00 minutes).

The MDES issued a decision finding as follows:

> The employer discharged the claimant because she refused to sign a document that she believed was not clear. It was not unreasonable for the claimant to request clarification of the document she was asked to sign. The claimant was a long-time employee. The evidence presented in this case does not show the claimant's actions violated a known or reasonable policy or that signing this document had been a condition of employment. The employer has the burden to establish misconduct connected with the work by substantial, clear, and convincing evidence. The employer has not met its burden in this case.

(MDES Decision, attached to Pl.'s Mot. as Exhibit "J").

During her deposition, Robinson occasionally claimed that the Non-Disclosure Agreement had some obscure meaning, so that it would not prohibit all forms of speech about the Tax Assessor / Tax Collector's office. However, Robinson eventually admitted that the Non-Disclosure Agreement meant what precisely what it says. (Robinson Depo. at 34-35). Robinson testified:

> Q. Well, you've read Exhibit 1, right?
>
> A. Uh-huh. [yes]
>
> Q. You drafted it, right?
>
> A. Right.
>
> Q. It uses plain language, doesn't it?
>
> A. Yes.

---

[1] The compact disc containing the audio recording is being filed conventionally with the Clerk.

> Q. Does it mean what it says?
>
> A. Yes.
>
> Q. Okay. It's telling an employee or having an employee sign agreeing that the employee may not discuss any matters concerning the business or conduction of business of the Noxubee County tax assessor/collector's office, right?
>
> A. That's correct.

(Depo. of Robinson at 33-34).

Harris testified that she refused to sign the agreement for many different reasons. For instance, Harris believed the agreement would prohibit her from disclosing information within the public record. (Harris Depo. at 29-30). Harris believed the agreement would inhibit her from doing her job. (Harris Depo. at 30-31).

Harris also knew that the agreement would prohibit her from speaking about matters outside of her job duties. (Harris Depo. at 30-31, 50-56). Harris testified that the agreement would have prevented her from reporting malfeasance. (Harris Depo. at 50-56). For instance, Harris knew that the records in the Tax Assessor / Tax Collector's office had a shortfall of approximately $12,000 in cash. (Harris Depo. at 51). The missing money had nothing to do with Harris' job duties. (Harris Depo. at 51-52). Nevertheless, because the missing money concerned the "business or conduction [sic] of business of the Noxubee County Tax Assessor/Collector's Office" the Non-Disclosure Agreement prohibited discussion of the matter. (Harris Depo. at 52-53).

As discussed below, as a matter of law the Non-Disclosure Agreement infringed on Harris' First Amendment citizen-speech rights. The Agreement was a prior restraint on citizen speech, not connected with Harris' job duties, and for which there was substantial public concern.

Because Robinson admits that she fired Harris for refusing to sign the unconstitutional agreement, Harris is entitled to judgment as a matter of law as to Defendants' liability.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A plaintiff who shows that there is no genuine issue of fact and that plaintiff is entitled to judgment as a matter of law is entitled to summary judgment. *See, e.g., Vais Arms, Inc. v. Vais*, 383 F.3d 287, 291 (5th Cir. 2004).

Although the Court will consider all facts and inferences in the light most favorable to the non-moving party, "the nonmoving party may not rest upon mere denials or allegation, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). To this end, "the mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient." *Anderson,* 477 U.S. at 248. It is clear then that a "metaphysical doubt" with respect to the existence of a genuine issue of triable fact is not enough to preclude summary judgment. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Little,* 37 F.3d at 1075. In *Matsushita,* the Supreme Court state that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " (*Id.* at 587).

## IV. ARGUMENT

**A.     Valerie Harris is Entitled to Summary Judgment as to Liability on her First Amendment Claims.**

   1. Prior Restraint on Protected Speech.

A governmental employer violates the First Amendment by disciplining an employee "on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378 (1987); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). An employer violates the First Amendment by imposing a prior restraint, prohibiting constitutionally protected speech. *United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454, 466 (1995) (government ban on employees' receiving compensation for making speeches was unconstitutional prior restraint); *Moore v. Kilgore*, 877 F.2d 364, 369 (5th Cir. 1989) (fire department rule which prohibited firefighters from discussing any department policy was an unconstitutional prior restraint). *See also Smith v. Acevedo*, 2010 U.S. Dist. LEXIS 152241, *14 (W.D. Tex. September 20, 2010) (police department policy prohibiting critical speech was unconstitutional prior restraint).

A prior restraint on speech prohibits or censors speech before it can take place and is particularly insidious to First Amendment rights. *Cooper v. Dillon,* 403 F.3d 1208, 1215 (11th Cir. 2005). Courts have long held that prior restraints on speech are strongly disfavored and are "unconstitutional limitations ... except in exceptional circumstances." T*est Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 579 (5th Cir. 2005).

It is beyond dispute that the Confidentiality Agreement which the Noxubee County Tax Assessor / Collector's Office required was a prior restraint on constitutionally protected speech. The Agreement censored all speech regarding the "business or conduct of business" of the

governmental office. It is undisputed that the Agreement would prohibit constitutionally protected speech.

As discussed below, the Agreement prohibited speech on myriad issues of public concern and speech outside of Harris's job duties. There is no governmental interest which outweighed employees' ability to make the constitutionally protected speech.

Consequently, the Non-Disclosure Agreement constitutes an unconstitutional prior restraint on speech in violation of the First Amendment.

2. First Amendment Retaliation.

An employee has a claim for First Amendment retaliation where the employee is fired for exercising rights protected by the First Amendment. *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006). The traditional elements of a claim for termination in violation of the First Amendment are: 1) plaintiff suffered an adverse employment action; 2) the speech at issue involved a matter of public concern; 3) plaintiff's interest in commenting on the matter of public concern would outweigh her employer's interest in promoting efficiency; and 4) the subject speech motivated the employer's adverse action. *Modica*, 465 F.3d at 180.

In the First Amendment context, an adverse employment action is any action which "would likely chill the exercise of constitutionally protected speech." *Deprado v. City of Miami*, 264 Fed. Appx. 769, 772 (11th Cir. 2008). The definition of "adverse employment action" in a claim under 42 U.S.C. § 1983 is even broader than under Title VII. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. Tex. 2007); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. Tex. 1999). The Fifth Circuit has indicated that the *Burlington Northern* analysis of adverse employment actions applies to First Amendment claims. *McCoy v. City of Shreveport*,

492 F.3d 551, 562 (5th Cir. 2007). The Supreme Court in *Burlington Northern* held that an adverse employment action was anything that:

> [W]ould have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

Termination from a position is unquestionably an adverse employment action. *Southard, v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

    3. *Connick/Pickering* Analysis.

In determining whether speech involves a matter of public concern, the Court considers the "content, form and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). It is firmly established that speech disclosing evidence of impropriety or corruption by government officials necessarily addresses matters of public concern. *See, e.g., Branton*, 272 F.3d at 739; *Thompson v. City of Starkville, Mississippi*, 901 F. 2d 456, 463 (5th Cir. 1990). In *Thompson*, the Court stated that "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Thompson*, 272 F. 3d at 739 (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)). *See also Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (stating that "[p]ublic interest is near its zenith when ensuring that organizations are being operated in accordance with law, and seeing that public funds are not purloined").

The employer bears the burden of establishing that its interest in promoting efficiency outweighs the employee's interest in making protected speech. *Vojvodich v. Lopez*, 48 F.3d 879 (5th Cir. 1995). In the analysis, the Court employs a "sliding scale" to weigh public concern

against the level of disruption. *See Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992). Among the factors which the Court should consider in evaluating this prong are:

1) the degree to which the speech involved a matter of public concern, and the gravity of that concern;

2) the extent to which the speech disrupted necessary close working relationships;

3) the time, place and manner of the speech; and

4) the context in which the speech was made.

*Connick v. Myers*, 461 U.S. 138, 151-153 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

The Supreme Court has noted that "[t]he government cannot restrict the speech of the public at large just in the name of efficiency." *Waters v. Churchill*, 511 U.S. 661, 675 (U.S. 1994). In *Waters*, the Court stated:

> Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions. And a government employee, like any citizen, may have a strong, legitimate interest in speaking out on public matters. ***In many such situations the government may have to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished.***

*Waters*, 511 U.S. at 674 (U.S. 1994) (emphasis added) (internal citations omitted).

There is no dispute in this case that the Non-Disclosure Agreement would prohibit speech on innumerable matters of public concern. The Agreement would prohibit all speech, without limitation. The Agreement would prohibit speech from the mundane through reports of government corruption, where public interest is at its zenith. The Agreement would prohibit Harris, and other employees, from reporting malfeasance, including the missing $12,000 about which Harris was aware. There is no dispute that the Non-Disclosure Agreement prohibited myriad speech on issues of public concern.

11

Similarly, there is no dispute as to balancing the public concern against any alleged disruptive effects on the employer. As explained in *Lopez,* the employer bears the burden of showing that the protected speech would be disruptive to the efficiency its operation. Noxubee County can make no such showing here.

As explained by the Supreme Court in *Waters*, the government cannot enact a blanket prohibition against free speech under the guise of "efficiency." That is precisely what Noxubee County attempted in this case. Noxubee County's interest in muzzling the employees of the Tax Assessor / Collector's office does not outweigh the public interest in the employees' speech.

4. *Garcetti* Analysis.

The final hurdle for Plaintiff to succeed on her First Amendment claims is showing that the Non-Disclosure Agreement would have prohibited speech outside of her actual job duties. In *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) the Supreme Court held that speech pursuant to an employee's "actual job duties" was employee speech and unprotected by the First Amendment. However, *Garcetti* explained that speech outside the employee's "actual job duties" was citizen speech and fully protected by the First Amendment. *Garcetti*, 547 U.S. at 419. The Court explained:

> The Court has recognized that a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. See Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. See, e.g., Connick, supra, at 147 ("Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government").

*Garcetti*, 547 U.S. at 419.

Where there are facts in dispute, the determination as to whether speech was pursuant to the employee's actual job duties is inherently factual. S*ee, e.g., Posey v. Lake Pend Oreille Sch. Dist*. No. 84, 546 F.3d 1121, 1130 (9th Cir. 2008); *Reilly v. City of Atlantic City*, 532 F.3d 216, 227 (3d Cir. 2008).

However, in this case, there is no factual dispute as to whether the agreement would prohibit citizen speech or merely employee speech. In this case, the language of the Agreement and the testimony of Robinson herself show there is no issue for trial as to the breadth of the prohibition.

The Non-Disclosure Agreement is a paradigm of unconstitutionally broad speech prohibition. A review of the language drafted by Defendants and required of all employees is telling:

> Please be reminded that discussing any matters concerning the business or conduction [sic] of business of the Noxubee County Tax Assessor/Collector's Office is strictly prohibited. This includes but is not limited to employee and employer meetings. Failure to adhere is grounds for immediate termination.

(Exhibit "C"). By broadly prohibiting discussion of "any matters concerning the business or conduction [sic] of business of the Noxubee County Tax Assessor/Collector's Office" Defendants enjoined <u>all</u> speech – both protected and unprotected.

Robinson testified that the various classes of employees (Deputy Clerk, Appraiser, Mapper, Clerk) each had distinct job duties. No one employee had job duties that concerned the entire office. Harris' job duties included only those of a Deputy Clerk. Harris' job duties did not concern all of the remainder of the operations of the Tax/Assessor Collector's office. Similarly, Harris' job duties did not concern malfeasance in the office, including the missing $12,000.

The Non-Disclosure Agreement would have prevented Harris from speaking about matters within her job duties, which are unprotected under *Garcetti*. However, the Agreement likewise prohibited speech <u>outside</u> Harris's job duties, which is protected under *Garcetti*.

Because it is undisputed that the Agreement would have prohibited speech outside Harris' actual job duties, the Agreement prohibited speech protected by the First Amendment. Accordingly, the Agreement violated Harris' free speech rights.

**B. The MDES Factual Findings Have Preclusive Effect As to Harris's First Amendment Claims.**

While Robinson admitted that Harris was terminated because she refused to sign the Non-Disclosure Agreement during her deposition, it is worth noting that Defendants are collaterally estopped from contesting this or any other fact inconsistent with the MDES decision.

The Fifth Circuit in *Cox* held that factual findings made by the Mississippi Department of Employment Security (MDES) have preclusive effect in subsequent proceedings. *Cox v. DeSoto County, Mississippi*, 564 F. 3d 745, 747-48 (5th Cir. 2009) cert. denied 130 S.Ct. 139 (2009). The Parties to the MDES proceeding are collaterally estopped from re-litigating factual findings made in the administrative proceeding. *Cox,* 564 F.3d at 748. The Fifth Circuit specifically held that findings by the MDES are given preclusive effect in a subsequent claim for wrongful discharge. *Cox*, 564 F.3d at 748. The Fifth Circuit held that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Id.* (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)). The *Cox* Court noted that administrative decisions by the MDES are given preclusive effect in State Courts where supported by evidence and in the absence of fraud. *Id. Cox* held that MESC factual findings must be given preclusive effect for

14

all claims in federal court except for claims for which "Congress has provided for a detailed administrative remedy." *Id.* at 749.

In *Cox* the employee claimed that she was terminated for reporting illegal conduct and made a claim for wrongful termination under Mississippi law. *Id.* at 747. The employee then sought unemployment benefits. *Id.* The MDES conducted a hearing and determined that *Cox* was terminated for work-related misconduct rather than for reporting criminal activity. *Id.* *Cox* appealed to the MESC Board of Review. *Id.* *Cox* the appealed to the Circuit Court, but subsequently dismissed that appeal. *Id.*

The Fifth Circuit held that the MESC finding that Cox had been terminated for misconduct was entitled to preclusive effect in her later claims for wrongful discharge. *Id.* at 748. The Court in *Cox* held that where a party does not appeal findings by the MDES the party is barred from subsequently arguing that the decision was not based on the evidence or was fraudulent. *Id.* Because the MDES finding was entitled to preclusive effect, the defendant in *Cox* was entitled to summary judgment. *Id.* at 749.

The *Cox* opinion is controlling in this case. *Cox* involved a wrongful discharge claim like this case and findings by the same State administrative agency (the MDES). The Fifth Circuit unequivocally held that the MDES's factual findings are given preclusive effect in a subsequent civil claim other than a claim for which Congress has enacted an administrative remedial scheme.[2] Thus, the *Cox* decision holds that the MESC findings are given preclusive effect for all of Harris' claims other than her Title VII claim.

Defendants may not take any position contrary to the MDES findings, since Robinson admitted in her deposition she fired Harris for not signing the Non-Disclosure Agreement.

---

[2] There is, of course, no administrative remedial scheme for First Amendment claims under 42 U.S.C. § 1983. This exception referenced by *Cox* would apply to claims under statutes such as Title VII, which are not at issue in this case.

15

However, to the extent Defendants do take some position contrary to the MDES findings, they are estopped from doing so under *Cox*.

## V. CONCLUSION

Plaintiff is entitled to summary judgment as to liability on her claim for discharge in violation of the First Amendment to the United States Constitution. The Court should grant Plaintiff's Motion for Summary Judgment as to these claims, and these claims should be tried on the issues of damages only.

**RESPECTFULLY SUBMITTED**, this the 1st day of June, 2018.

**MCLAUGHLIN LAW FIRM**

By: /s R. Shane McLaughlin
R. Shane McLaughlin (Miss. Bar No. 101185)
338 North Spring Street Suite 2
P.O. Box 200
Tupelo, Mississippi 38802
Telephone: (662) 840-5042
Facsimile: (662) 840-5043
rsm@mclaughlinlawfirm.com

**WAIDE & ASSOCIATES, P.A.**
Jim Waide (Miss. Bar No. 6857)
Rachel Pierce Waide (Miss. Bar No. 100420)
Waide & Associates, P.A.
Post Office Box 1357
Tupelo, Mississippi 38802
Telephone: 662-842-7324
Facsimile: 662-842-8056
Email: waide@waidelaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification to the following:

**Jamie F. Jacks**
**Daniel J. Griffith**
**Post Office Box 1209**
**Cleveland, Mississippi 38732**
**jjacks@jlpalaw.com**
**DGriffith@jlpalaw.com**

This, the 1st day of June, 2018.

                                                  /s R. Shane McLaughlin