**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**VALERIE DENECE HARRIS**                                                                **PLAINTIFF**

**v.**                                                                                                       **CAUSE NO. 3:17-cv-291-CWR-LRA**

**NOXUBEE COUNTY, MISSISSIPPI and**                                            **DEFENDANTS**
**BETTY S. ROBINSON**

**ORDER GRANTING SUMMARY JUDGMENT**

Before the Court are three motions for summary judgment filed by Valerie Harris, Noxubee County, and Betty Robinson. Docket Nos. 40, 43, 45. Additionally, Robinson seeks leave to file a motion for judgment on the pleadings and Harris seeks leave to supplement her response in opposition. Docket Nos. 58, 61. The parties all argue that there is no genuine dispute as to any material fact in this case; the Court agrees. For the reasons stated below, summary judgment is granted in favor of Noxubee County and Betty Robinson and both motions for leave are denied.

**I.**      **Factual and Procedural History**

The following facts are from the complaint, pleadings on summary judgment, and the parties' proposed pre-trial order presented to the Court ahead of the September 25, 2018 pre-trial conference.

For nearly 20 years, Harris was employed by Noxubee County serving as an appointed deputy in the office of the Tax Assessor & Collector. In December 2015, Robinson took over the elected position of Noxubee County Tax Assessor & Collector. On November 17, 2016, Robinson held a staff meeting and ordered all of the employees in the office to sign the following agreement:

> Please be reminded that discussing any matters concerning the business or conduction of business of the Noxubee County Tax Assessor/Collector's Office is strictly prohibited. This includes but is not limited to employee and employer meetings. Failure to adhere is grounds for immediate termination.

Harris refused to sign the agreement at the meeting. Robinson presented it to her again on January 23, 2017, and again Harris refused to sign. Robinson fired Harris immediately.

After her termination, Harris filed for unemployment benefits with the Mississippi Department of Employment Security ("MDES"). After an initial denial and appeal, an ALJ for the MDES determined that Noxubee County and Robinson had not met their burden of "establish[ing] [Harris'] misconduct connected with the work by substantial, clear, and convincing evidence" and Harris was entitled to unemployment benefits.

In April 2017, Harris filed the instant suit claiming a violation of her rights under the First Amendment by Noxubee County and Robinson. On June 1, 2018, the dispositive motion deadline, all three parties moved for summary judgment. On September 25, 2018, the parties met for a pre-trial conference before this Court. At the pre-trial conference, Harris' counsel asserted that Robinson was being sued in both her official and individual capacities. In response, Robinson retained her own counsel, apart from the representation provided by Noxubee County, and on September 28, 2018, she filed a motion for leave to file a motion for judgment on the pleadings as to the claims against her in her individual capacity. Harris responded in opposition to Robinson's motion, and additionally filed a motion for leave to supplement her response with exhibits. All the issues are fully briefed.

## II. Legal Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A dispute is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 739 (W.D. Tex. 2015) (quotations and citations omitted). "On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Baylor Cty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 377 (N.D. Tex. 2016), *aff'd sub nom.*, 850 F.3d 257 (5th Cir. 2017) (quotations and citations omitted).

## III. First Amendment Rights

Harris raises claims under 42 U.S.C. § 1983 alleging violations of rights secured by the First Amendment of the United States Constitution; the Complaint did not particularize the type of First Amendment claim, but Harris' motion for summary judgment describes her claims under the doctrines of prior restraint and first amendment retaliation.

The Supreme Court has long held that government employers "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465 (1995). However, those restraints are not applicable to speech from a citizen "upon a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 147 (1983). When evaluating restraints on speech, the Court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968).

There is a threshold inquiry when it comes to public employee speech cases: "whether the public employee spoke as a citizen at all." *Anderson v. Valdez*, 845 F.3d 580, 592 (5th Cir. 2016)

(*citing Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006)). After determining that the plaintiff is not speaking pursuant to the duties of her job, then it is necessary to evaluate whether the speech is a matter of public concern. *See Connick,* 461 U.S. at 147–148; *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (whether the speech in question involved matters important to the public was "irrelevant to the threshold inquiry. Job-required speech is not protected."). If it is determined that the employee was speaking as a citizen on a matter of public concern, then "[t]he question becomes whether the relevant government entity had an adequate justification" for the limitation of speech. *Garcetti*, 547 U.S. at 418.

### A. Prior Restraint

In her motion for partial summary judgment, Harris alleges that the agreement was a prior restraint, and as such, the strong presumption against prior restraints should apply to the agreement drafted by Robinson. Noxubee County and Robinson argue that the complaint did not invoke the doctrine of prior restraint, so an expansion of the claim now is improper.

Alleging a prior restraint is a facial constitutional challenge. "Since every challenge based on prior restraint is a facial challenge, the remedy is always complete invalidation." *Serv. Employees Int'l Union v. City of Houston*, 542 F. Supp. 2d 617, 629 (S.D. Tex. 2008), *aff'd in part, rev'd in part and remanded sub nom.*, 595 F.3d 588 (5th Cir. 2010).

Harris is correct that in cases of a prior restraint, there is a "heavy presumption" against the restraint's "constitutional validity." *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963). However, the Fifth Circuit has not extended this presumption of invalidity to policies regulating employee speech. *See Moore v. City of Kilgore, Tex.*, 877 F.2d 364, 392 (5th Cir. 1989). The Fifth Circuit explained that when speech policies threaten employees with termination for violating the policy, the policy is not a prior restraints. *Id*. They are not prior

4

restraints, the court reasoned, because they are not as severe as actions, which would directly prohibit speech, like shutting down printing presses, or a speaker being gagged or subjected to an injunction. *Id*. The court described this type of employee speech policy as an "after-the-fact" sanction, not severe enough to receive the suspect treatment given to prior restraints. *Id*.

Harris also argues that the prior restraint is so broad that it would prohibit every type of speech, protected or not. *See* Docket No. 51 at 1 ("The breadth of the Non-Disclosure Agreement at issue is shockingly unconstitutional. The Agreement can be read in no way other than muzzling citizen speech on all conceivable issues, including important issues of public concern."). This argument suggests that not only is the agreement a prior restraint but it is also facially unconstitutional for reasons of overbreadth. The problem with both of these challenges is that Harris' complaint describes an as-applied challenge, not one of facial unconstitutionality. The complaint requests actual damages and reinstatement, but no other form of declaratory or injunctive relief; the complaint does not articulate any injury to other parties because of the agreement.

In *Moore,* a firefighter sued the city after he was disciplined for speaking to the press regarding recent cuts in the fire department staff and budget. The Fifth Circuit found that while the department's policy of not allowing firefighters to speak to the press without prior approval was unconstitutional as applied to the plaintiff, the court could not hold that the policy was facially unconstitutional. *Moore*, 877 F.2d at 390. The court reasoned that the plaintiff's facial challenge was "entirely upon grounds of overbreadth." *Id*. For a court to uphold an overbreadth challenge the policy has to be "not only ... real, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep." *Id*. at 391 (quotations and citations omitted) (emphasis added). Overbreadth is an exception to traditional standing that allows a party to assert the rights

5

of third parties whose "protected speech might be chilled." *Id*. at 390. But the plaintiff had not asserted the rights of any third parties in his pleadings. *Id*. The court ultimately refused to engage in an overbreadth analysis because it "would have [had] to hypothesize both the legitimate and the illegitimate applications, and somehow compare the two" to determine how substantial the overbreadth was in relation to the policy's legitimate sweep; this hypothesizing would have been "highly speculative." *Id*. at 391. This Court finds itself in a similar situation with Harris not alleging the claims of any third parties. Like the Court in *Moore*, this Court would be left speculating as to how substantial the overbreadth might be in relation to its legitimate application.

Harris has asked this court to rule that no matter how the agreement is applied, it prohibits her protected speech. While Harris does not call it such, that would be a ruling that the agreement is facially unconstitutional because it is a prior restraint and because of the overbreadth of the agreement. Such a ruling would bar the agreement in its entirety, both its legitimate and illegitimate applications.

The Court acknowledges that this is a difficult case. Undoubtedly, the agreement is worded poorly and firing an employee for her refusal to sign a poorly worded agreement is not, in the Court's opinion, a prudent managerial decision. However, just alleging that the agreement would bar all types of future speech is not enough. The Fifth Circuit case law instructs us that employee speech agreements are not due the heightened scrutiny of prior restraints. Furthermore, there has been no pleading which properly alleges an overbreadth challenge.

### B. First Amendment Retaliation

Now the Court turns towards the enumerated types of speech Harris claims the agreement would have prohibited. To prove a First Amendment retaliation claim, a public employee must

prove: "(1) [s]he was not speaking pursuant to [her] official job duties; (2) [s]he was speaking as a citizen on a matter of public concern; (3) [her] interest in speaking outweighed [her] employer's interest in promoting workplace efficiency; (4) [s]he suffered an adverse employment action; and (5) the adverse action was substantially motivated by the protected speech." *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 576 (N.D. Tex. 2012), *aff'd sub nom.* 546 F. App'x 466 (5th Cir. 2013) (citations omitted). The first three elements are questions of law and the last two elements are typically questions of fact. *Id*.

In the present case, the parties agree that Harris was terminated for her failure to sign the agreement; the question presented by the parties is whether the agreement barred Harris from speaking as a citizen on matters of public concern. The Court's analysis must start with the threshold inquiry under *Garcetti*, which is whether Harris would have been speaking as a citizen, and not pursuant to her duties as a deputy Tax Assessor & Collector.

In *Garcetti*, the Supreme Court held that a deputy district attorney's memorandum, outlining his concerns about an affidavit used to obtain a search warrant, was written in the course of his job, and as such was not protected citizen speech. "[W]hen public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421 (emphasis added). The Supreme Court noted that government employers have broad discretion to restrict speech and they "need a significant degree of control over their employees' words and actions" because "without it, there would be little chance for the efficient provision of public services." *Id.* at 418.

To determine the role of the speaker "courts review a number of factors, including the internal versus external nature of the speech, the employee's formal job description, whether the

7

employee spoke on the subject matter of his or her employment, and whether the speech resulted from special knowledge gained as an employee. No one factor alone is dispositive." *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 829 (S.D. Tex. 2012) (citations omitted). This determination may be made in cases, like the present one, where the plaintiff is claiming that future speech is being prohibited. *Id*.

Harris has articulated three types of future speech she was concerned the agreement would prohibit. The first two types of speech, as admitted by Harris, are unprotected employee speech. First, Harris believed that the agreement would have barred her from disclosing public information that she was lawfully required to disclose, like in instances when customers asked questions regarding taxes at the Tax Assessor & Collector's office. Second, she felt that the Mississippi Public Records Act required that certain documents be disclosed to the public, and the agreement would prohibit such disclosure. Harris admits in her deposition that she took an oath of office, and was concerned that the agreement would force her to break that oath; she also testified that her concerns with the agreement had to do with her role as a deputy Tax Assessor & Collector. *See* Docket No. 43-1 at 29:12–15; 31:2–9; 33:16–17. Further, Harris' summary judgment pleadings admit that this speech was unprotected. *See* Docket No. 51 at 1–2 ("Defendants' real argument in this case is that, because Plaintiff correctly testified in her deposition that the Agreement would have precluded unprotected employee speech, in addition to precluding protected citizen speech, Defendants should escape liability."). Taking the facts in a light most favorable to Harris, these two types of speech are speech Harris would have made in the course of her duties as a deputy clerk and as such, are unprotected speech that are subject to lawful regulation by Robinson.

The third type of speech Harris alleges is that she "witnessed a $12,000 shortage in the office, and [she] believed that such matters would be of strong public interest, such that she might be lawfully required to disclose them." Docket No. 1 at 2–3. While such a shortage in the office might have been of public interest, under *Garcetti,* it is the role of the speaker at the time of the speech that is the threshold question. The problem here is that there is no direct speech for the court to analyze; the Court is forced to rely on what Harris claims she would have said. *See generally Johnson,* 893 F. Supp. 2d 817 (court applied *Garcetti* to plaintiff's claims that her plans for future speech were barred by department policy prohibiting such speech). But Harris does not provide any context about the way in which she planned to report the malfeasance. Harris does not allege any direct plans to talk to legislatures, the press, or law enforcement outside of her office. *See Pickering,* 391 U.S. at 564–65 (school teacher's letter to local newspaper criticizing district leadership was protected speech); *Briscoe v. Jefferson Cty.*, 500 F. App'x 274, 278 (5th Cir. 2012) (county secretary who reported missing fuel to county supervisors was acting as an employee and speech was not protected citizen speech). The language of the complaint itself suggests that she had no immediate plans to disclose this information, but at some point "might be" required to do so.

Harris argues that the missing money had nothing to do with her job duties, so reporting it could have only been done in her role as a citizen. It is clear from Harris' complaint and deposition testimony, however, that she only knew of the missing funds because of her employment. *See* Docket No. 1 at 2-3; Docket No. 43-1 at 55:8–20.

The Fifth Circuit applied *Garcetti* when the employee's speech was "not necessarily required by his job duties but nevertheless [was] related to his job duties." *Williams,* 480 F.3d at 693. In *Williams,* a former high school athletic director was fired after writing a memorandum to

his school's principal complaining about the management of the athletic bank accounts. *Id.* at 690–91. The memorandum he wrote was based upon "his daily operations." *Id.* at 694. The court noted that the memorandum was based upon a special knowledge that the athletic director could not have as an ordinary citizen; it was a knowledge only gained through his employment. *Id.* The plaintiff argued that writing this memorandum was not explicitly required of him but the court held that "[s]imply" because his speech was not "demanded of him, does not mean he was not acting within the course of performing his job." *Id.*

Similarly, Harris' knowledge of the malfeasance is based upon special knowledge she gained through her role as a deputy. The Court cannot hypothesize as to how Harris might have reported this information in the future. Without any context for how Harris might report the malfeasance, the Court is left only with the facts of how Harris learned about the missing funds. Harris gained this special knowledge through her role as a deputy, which supports the conclusion that she would have been talking about the missing money as an employee and not as a citizen.

Taken in a light most favorable to Harris, the types of speech she was concerned about were types of speech she would have made pursuant to her duties as a deputy Tax Assessor & Collector. For these reasons, summary judgment is granted in favor of Noxubee County and Robinson. The Court need not address whether the speech would have been on a matter of public concern because all three types of alleged speech fail under the threshold inquiry of *Garcetti*. For the same reason, the Court need not weigh the government's interest in the regulation of such speech against Harris' interest as a speaker.

## IV. Individual Capacity

Robinson argues that leave should be granted to allow her, in her official capacity, to file a motion for judgment on the pleadings. Due to the reasoning articulated above, the Court need

10

not allow the motion for leave or address qualified immunity in this case. The first factor of the qualified immunity test requires that a constitutional violation be alleged by plaintiff. *See Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009) (citations omitted) (the test for qualified immunity asks "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."). The Court has determined there is no constitutional violation in this case; therefore, Harris could not move forward on an individual capacity claim. Similarly, Harris' motion for leave to file additional exhibits in opposition to Robinson's motion for judgment on the pleadings is also denied.

The Court would note, however, that to survive an invocation of qualified immunity, a heightened pleading standard requires "[plaintiff] must allege facts specifically focusing on the conduct of [defendant] which caused [her] injury." *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995); *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 739–40 (S.D. Tex. 2016) (outlining the 5th Circuit's history of heightened pleading in qualified immunity cases). Robinson fired Harris for refusing to sign the agreement; the complaint makes this clear. Defendants' answer to the complaint raises the qualified immunity defense; the language in the pre-trial order, which was submitted by both parties, mentions punitive damages against the individual defendant. All of this suggests to the Court that Robinson should have been on notice regarding the nature of this suit.

## V. Conclusion

Accordingly, Harris' Motion for Summary Judgment [Docket No. 40] is DENIED; Noxubee County's and Robinson's Motions for Summary Judgment [Docket Nos. 43 and 45] are

11

GRANTED; Robinson's Motion for Leave [Docket No. 58] is DENIED; and Harris' Motion for Leave [Docket No. 61] is DENIED.

**SO ORDERED**, this the 19th day of October, 2018.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
